31 C.C.P.A.(Patents)

## In re SUSSMAN.

### Patent Appeal No. 4830.

Court of Customs and Patent Appeals.

Feb. 7, 1944.

F. T. Flaherty, of Wilmington, Del. (C. H. Biesterfeld and Allan R. Plumley, both of Wilmington, Del., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 3, 4, 5, 9, 12, 13, 14, 15, 17, 18, 23, 25, 26, 27, 28, and 30 to 38, inclusive.

Appellant's brief states:

"This is an appeal from the decision of the Board of Appeals of the United States Patent Office dated August 6, 1942, and September 15, 1942, affirming the Examiner's rejection of claims 3, 4, 9, 12, 13, 30, 31, and 32 in the application of Sidney Sussman filed August 5, 1939, Serial No. 288,587, for "Preparation of Formals" and denying appellant's petition in respect to any change in the decision respectively.

"The claims not listed are not before the Court, claims 5, 14, 15, 17, 18, 23, 25, 26, 27, 28, 35 and 38 being directed to non-elected species, and claims 33, 34, 36, and 37 being withdrawn from appeal to simplify the issues."

Therefore the only claims to be considered by us are Nos. 3, 4, 9, 12, 13, 30, 31, and 32.

Claims 3, 12, 30, and 31 are illustrative of the claims before us and read as follows:

"3. A process for the preparation of an unsymmetrical acetal which comprises heating an acetal with a dihydric alcohol in accord with the following equation:

$$ROCHOR + HOC_nH_{2n}OH \rightarrow ROH + ROCHR'\ OC_nH_{2n}OH$$
$$|$$
$$R_1$$

in which R is a hydrocarbon radical, $R_1$ is a radical selected from the group consisting of hydrogen and hydrocarbon radicals and n is an integer greater than 1 and less than 4, and after stopping the reaction removing the $ROCHR'\ OC_nH_{2n}OH$ from the reaction mixture."

"12. A process for the preparation of (methoxy methoxy) ethanol which comprises reacting methylal with ethylene glycol in the presence of a sulfuric acid catalyst and after equilibrium has been substantially established, neutralizing the sulfuric acid catalyst and separating the (methoxy methoxy) ethanol from the reaction product by distillation."

"30. A process for the preparation of (methoxy methoxy) ethanol which comprises reacting methylal with ethylene glycol."

"31. A process for the preparation of (methoxy-methoxy) ethanol which comprises reacting methylal with ethylene glycol in the presence of an acidic type catalyst."

As indicated by the above claims, appellant's alleged invention relates to a process for the preparation of unsymmetrical acetals described as acetal alcohols and (methoxy methoxy) ethanol.

While there were a large number of references cited, only two were relied upon in the rejection of the claims before us. They are

Carothers 2,071,252 February 16, 1937.
Carothers 2,110,499 March 8, 1938.

Appellant's application states:

"Broadly, the process may be conducted by reacting an acetal with an oxy-substituted alcohol,—$OC_nH_{2n}$ OH, in which n is an integer greater than 1 and when equilibrium has been substantially reached recovering the *unsymmetrical* acetal produced. More specifically, the invention is realized by reacting preferably while under reflux, an acetal with an oxy-substituted alcohol, the reaction preferably being catalyzed by an acid catalyst. When equilibrium has been substantially reached the catalyst, if any, is neutralized and the desired unsymmetrical acetal, by-product alcohol and any excess of acetal are removed by a fractional distillation which separates these materials, the residue being treated, if desired, with

additional acetal and catalyst and recycled. * * *"

The patent to Carothers, No. 2,071,252, states:

"My new process for making linear polyacetals may be better understood by comparing it with the prior art method of making cyclic acetals by the interchange method, i. e. through reaction of polyhydroxy compounds, such as ethylene glycol and trimethylene glycol, with an open-chain monomeric acetal, such as chloroacetal. * * * If the mixture is heated so that the ethyl alcohol distils off, the equilibrium shifts to the right and a good yield of the monomeric cyclic acetal is formed."

The patent then proceeds to describe the process claimed therein which we find it unnecessary to discuss, except to say that Carothers discloses the use of an acid catalyst. He, however, does not destroy or neutralize the catalyst in carrying out his process as does appellant.

Appellant, in his brief, concedes that merely reacting an acetal with a polyhydric alcohol, of which ethylene glycol is an example, was known in the prior art. His brief states:

"Broadly the process of reacting a polyhydric alcohol with an acetal is not new. In all of the prior art processes, however, two moles of the alcohol are removed during the reaction rather than one mole. Moreover, the processes of the art do not teach that prior to recovering the product from such a reaction it is necessary first to destroy the catalyst. Another distinguishing characteristic is that during the reaction appellant withdraws nothing from the zone of the reaction while in all of the processes of the art the alcohol formed is withdrawn by distillation. These vital differences result in the production of new products not heretofore known."

The examiner rejected all of the claims as unpatentable over the Carothers patents. He also rejected claims 3, 4, and 9 as being inoperatively broad "in the expressions 'an acetal' or 'a formal' when reference is made to one of the *reactants.*" He further stated: "The *products* are acetals and formals, and it is obviously not possible to use the *products* as initial *reactants* in the process. In the absence of a distinguishing restriction as to the nature of the *reacting* formals or acetals over the *resulting* formals or acetals, the above numbered claims are additionally rejected as of undue breadth."

With respect to this additional ground of rejection of claims 3, 4, and 9, while the board did not specifically discuss it, it affirmed the decision of the examiner which, in legal effect, was an affirmance of this additional ground of rejection of said claims. In re Wagenhorst, 64 F.2d 780, 20 C.C.P.A., Patents, 991.

Appellant, in his reasons of appeal, assigned no error in regard to this additional ground of rejection, and therefore the decision rejecting said claims 3, 4, and 9 will be affirmed. In re Rothenberg et al., 129 F.2d 706, 29 C.C.P.A., Patents, 1230.

With respect to the remaining claims, they may, for the purpose of discussion, be divided into two groups, viz., claims 12 and 13, and claims 30, 31, and 32.

We will first consider the latter group, claims 30, 31, and 32.

Claim 30, as hereinbefore quoted, merely provides for the reacting of methylal with ethylene glycol to produce (methoxy methoxy) ethanol.

The examiner held with respect to all of the claims that the only difference between the process claimed and the prior art was the recital of the product produced.

If that is the only difference, the claims were properly rejected. See In re Caunt, 81 F.2d 405, 23 C.C.P.A., Patents, 855, and In re Duggan et al., 124 F.2d 215, 29 C.C.P.A., Patents, 765.

Claim 30 recites no steps which are not disclosed in the Carothers patent. This is, in effect, conceded in appellant's brief wherein it is stated:

"The Board of Appeals in its decision of August 6, 1942, affirmed the Examiner's rejection of claims 3, 4, 9, 12, 13, 30, 31 and 32. The position taken by the Board of Appeals appears to be best expressed by its statements:

" 'Briefly the * * * claims present the question of patentability of the process that may be stated broadly as treating acetals with dihydric alcohols.' (19 TR, first sentence)

" 'Applicant's specification appears to treat this basic principle as being his invention.' (19 TR, 3rd paragraph)

"The 'basic principle' referred to by the Board of Appeals is the treatment of ace-

tals with dihydric alcohols. Appellant concedes that this is not his invention for, as has been stated, Carothers, as well as the art of Carothers, carried out this basic reaction.

"On the contrary, appellant has shown under discussion of the invention that his contribution lies in *so directing the course of the reaction that he obtains new products, the acetal-alcohols, such as MME.*" (Italics ours.)

It follows from the foregoing that claim 30 was properly rejected for there is nothing therein embracing the steps of the reaction. In other words, if appellant obtains a new product through reaction of the elements mentioned, it must be due to some step in the process not included in the claim.

Claims 31 and 32 are similar to claim 30 except there is added the step of reacting the elements named in the presence of an acid catalyst.

However, Carothers discloses reaction in the presence of an acid catalyst; therefore, the addition of this step adds nothing to the patentability of the claims.

For the reasons stated, we can find no error in the rejection of claims 30, 31, and 32.

There remains for consideration the first group of claims, viz., claims 12 and 13.

Claim 12 has already been quoted in this opinion.

We have hereinbefore quoted from appellant's application wherein he states that broadly his process may be conducted by reacting the elements until an equilibrium has been substantially reached at which point the unsymmetrical acetal produced is recovered.

The application gives but one specific mode of carrying out the process which it states is the preferred mode. It is described as reacting the elements under reflux in the presence of an acid catalyst until equilibrium has been substantially reached when the catalyst is neutralized and the desired unsymmetrical acetal, by-product alcohol and any excess of acetal are removed by fractional distillation.

The gist of appellant's process as distinguished from the prior art seems to be in stopping the reaction when equilibrium is reached, and we find nothing in the cited prior art suggesting this step. Upon this point the examiner, in his statement on appeal, said:

"Applicant devotes pages 6, 7, 8 and 9 of his description to the names and formula of reactants and resulting 'desired' compounds. The 'equilibrium' which is presumably the point at which the acidic catalyst is to be neutralized, is not described in the discussion as accompanied by any recognizable phenomena. It is to be assumed that this point *may* be the one at which evidence of reaction disappears, but it is not so stated, nor is it disclosed as any particular critical point in the course of the process. The examples are given in which the neutralizing is done after 30 minutes, 3 hours, two hours, 5.5 hours and 6 hours of refluxing. The reaction mixture is then distilled to recover the acetals.

\* \* \* \* \*

"The reference, Carothers, describes the process of the claims. Under the substantial conditions of the examples herein he shows formation of *cyclic* acetals, and shows that only *longer chain* dihydric alcohols result in open long chain acetals. He discloses the formation of the (cyclic) acetals under the substantial process conditions of the claims.

"If a critical condition exists or a critical difference exists between the process disclosed by Carothers (such as possibly the neutralization of the catalyst at 'equilibrium') it is not evident from the claims nor the description. The applicant does not even suggest how the well known cyclic acetal of the prior art might be avoided in his process. The examiner concedes that the process outlined in the claims is not taught in the prior art as *producing* the compounds functionally restricting the claims, but it has been shown that the same process with no apparent critical differences *has been conducted* resulting in different compounds."

The Board of Appeals in its decision stated:

"On consideration of the prior art, it is found that the two patents to Carothers fully disclose the basic principle of reacting acetals with dihydric alcohols to produce apparently the same resultant compounds as those secured by applicant. It seems that the disclosure in the two Carothers patents in this respect discloses this principle as being the prior art. The patents proceed to disclose various details of advance thereover in the way of more highly specialized products.

"We have carefully considered the situation including the contentions in the brief,

but are unable to agree that the examiner reached any erroneous conclusions in respect to invention. Applicant's specification appears to treat this basic principle as being his invention. The very numerous modifications and examples indicate that no particular features are highly vital or critical. It is apparent that among all the various and numerous examples of specific reagents that may be employed, some differences in minor details, such as temperature, time of treatment and various degrees of completion of the reaction, would be expected. Invention is clearly not involved in these features. They are regarded as well within the knowledge and skill of those working in this art in carrying out this basic reaction disclosed by Carothers, particularly.

"We find the same conclusion applies to the matter of stopping the reaction rather than trying to make it continuous. It is elementary that chemical reactions will come to equilibrium short of completion unless some of the reacted products are continuously removed from the reacting mass. This feature is treated in this broad conception at the bottom of page 3 and top of page 4 of applicant's specification. It is therefore not highly critical and has been urged as important only in later prosecution of the case."

The term "equilibrium" as applied in chemistry is defined in Hackh's Chemical Dictionary as follows:

"The balanced state reached when the action apparently stops in a chemical reaction, that is, the concentration between reaction products and the original reacting substances has become such that decomposition and recombination proceeds with equal speed; as, $2Fe + 3 H_2O \rightleftharpoons 3H_2 + Fe_2O_3$. See mass action."

It will be observed from the above quotation from the examiner's statement that it is stated that the "equilibrium" referred to in the appellant's application "is not described in the discussion as accompanied by any recognizable phenomena," and he notes that in the examples given, the reaction varies between 30 minutes and 6 hours.

We regard this statement of the examiner as equivalent to a statement upon his part that the element of claim 12, "after equilibrium has been substantially established," is so vague and indefinite that it may not be resorted to for the purpose of distinguishing the process there claimed from the process disclosed in the cited prior art.

Whether equilibrium of a chemical reaction is accompanied by any recognizable phenomena during the reaction process presents a highly technical question concerning which we do not feel warranted in holding that the examiner was wrong, especially as this matter is not discussed at all in appellant's brief. See In re Wuertz et al., 110 F.2d 854, 27 C.C.P.A., Patents, 1039.

In view of the foregoing, the rejection of claim 12 will be affirmed.

There remains for consideration claim 13, which reads as follows:

"13. A process for the preparation of (methoxy methoxy) ethanol which comprises reacting a methylal-methanol azeotrope containing 92% methylal with substantially 5.2 moles of ethylene glycol, using approximately ½% sulfuric acid as the catalyst, refluxing the reaction mixture for approximately 6 hours, neutralizing the sulfuric acid by the addition of an alkali and recovering the (methoxy methoxy) ethanol by fractional distillation."

It will be observed that this claim does not contain the term "equilibrium" but in lieu thereof states the time of reacting the elements as "approximately 6 hours." It recites, as in claim 12, the product resulting from the process as being "(methoxy methoxy) ethanol."

The specific period of reaction recited in claim 13, in our opinion, renders the claim patentable. It is true that the examiner held that there were no critical differences between the claims before us and the processes of the prior art, and the board held that the stopping of the chemical reaction, as set forth in some of the claims, was not "highly critical."

In the case of In re Ruzicka, 132 F.2d 146, 30 C.C.P.A., Patents, 750, a like expression was used in the consideration of the steps of a process claim. We there held that the use of the term "highly," in such a connection, was improper and the same observation is applicable in considering claim 13.

It is well established that if the employment of a step results in the production of a product different in kind from the processes of the prior art, the step is broadly critical. In re Ruzicka, supra. In re Dreyfus, 73 F.2d 931, 22 C.C.P.A., Patents, 830. The term is usually applied in

cases involving proportions of ingredients employed in a process, and not to the employment of a step in a process. However, it is unnecessary for us to here decide whether the rule of criticalness is applicable to the step of claim 13 under consideration. The question is whether the step of stopping the reaction as set forth in the claim renders it patentable. In a broad sense, if it does render it patentable the step is critical. Appellant in his application gives two examples of reacting the chemical elements for 6 hours and one for 5½ hours. Two other examples are given, one where the reaction proceeded for 3 hours, and one for 30 minutes. Different proportions of the chemicals, however, were used in the several examples.

However, we are here concerned with the examples corresponding to claim 13. Appellant's application states that the result of the process as set forth in said claim 13 was the production of a product termed (methoxy methoxy) ethanol.

This step of stopping the reaction at the end of 6 hours, or at any other time, is nowhere suggested in the prior cited art, and it is not denied by the Patent Office tribunals that a product different in kind from the product of the prior cited art was produced by appellant.

In this connection we repeat a part of the hereinbefore quoted statement of the examiner, viz.:

"The examiner concedes that the process outlined in the claims is not taught in the prior art as *producing* the compounds functionally restricting the claims, but it has been shown that the same process with no apparent critical differences *has been conducted* resulting in different compounds."

It will be noted that the examiner does not state that the processes of the prior art produced compounds similar to those produced by appellant's process, but only that they produce *different* compounds.

If appellant produces the compound named in the claim, it must be due to some step in the process not disclosed in the cited prior art. That the step of stopping the reaction and neutralizing or destroying the catalyst at a certain point in the reaction process is not shown in the prior art is conceded.

The board held that appellant's specification appeared to treat the reacting of acetals with dihydric alcohols as the basic principle of appellant's invention. To this we cannot agree. In our opinion appellant's application treats the recovery of unsymmetrical acetals at a certain point in the reaction, viz., when equilibrium has been substantially reached as the basic principle of his invention.

As hereinbefore held, most of the claims are not sufficiently specific to embrace appellant's invention, but claim 13 is specific in this respect.

The board further held that all of the steps embraced in the claims are regarded as well within the knowledge or skill of those working in the art.

Ordinarily the opinion of the board in a technical matter of this nature would be accepted by us, but we do not think it proper to accept it in the case at bar, because it seems to us, as set forth above, the board has misconceived the basic principle of appellant's invention, viz., stopping the reaction when equilibrium has been reached, which, as hereinbefore stated, is not shown in the references.

Claim 13 states a process resulting in the production of (methoxy methoxy) ethanol, which is a product different in kind from the products produced by the process disclosed in the Carothers' patents.

In the case of In re Kaplan, 110 F.2d 670, 672, 27 C.C.P.A., Patents, 1072, we said:

"Of course, a patent may not be granted for a result, but it is not improper to look to a claimed result in considering the matter of novelty in a described step.

"The questions here are technical in character. Where such is the case this court hesitates to disagree with concurring decisions of the tribunals of the Patent Office, but where it is clear that a step, not disclosed by prior art, is involved, it is our duty fully to consider it and if, in our opinion, such step lends patentability to the claim, or claims, to say so."

The above quoted language is applicable to the case at bar and for the reasons hereinbefore stated we hold that claim 13 should be allowed.

The appeal is dismissed as to claims 33, 34, 36, and 37. The decision is affirmed as to the remaining claims before us, except as to claim 13, and the decision with respect to claim 13 is reversed.