33 C.C.P.A. (Patents)

**Application of KRASNOW.**

**Patent Appeal No. 5059.**

Court of Customs and Patent Appeals.
Jan. 7, 1946.

Sol Shappirio, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office rejecting all of the claims (Nos. 1 to 18, inclusive, 20 and 21) in appellant's application for a patent for an alleged invention relating to apparatus and a method for "the measurement of radioactivity within boreholes," for example, oil wells.

Claims 1, 2, 5, 6, 7, 8 and 14 are sufficiently illustrative of the claims on appeal which were rejected on prior art. They read:

"1. In an apparatus for measuring radioactivity within a borehole, a measuring system, sensitive to radioactivity, and adapted to be lowered within the borehole, a shield mounted adjacent the said system, so as to be traversed by rays emanating from material within the borehole, the said shield having portions facilitating the entrance of rays originating distant from the said shield, and having other portions restricting the entrance of rays from material close to the said shield.

"2. In an apparatus for measuring the radioactivity of materials within a bore-

hole, a measuring apparatus, adapted to receive rays originating within the borehole, and a shield, the shield being mounted adjacent to the said apparatus so as to intercept rays passing to the said apparatus, the shield further having portions discriminating against rays arising at a distance from the said shield."

"5. In an apparatus for measuring radioactivity within a deep narrow borehole, a member sensitive to radioactivity, and a shield, the shield being mounted adjacent to the said member so as to intercept at least a portion of the rays passing to the said member, the shield having substantially pyramidal depressions, the said depressions facilitating the entrance of rays from a remote point, and restricting the entrance of rays from points close to the said detector.

"6. A shield for use in radioactive measurements, and adapted to be placed adjacent to a radioactive measuring member between a dispersed source of radioactivity and a measuring element sensitive to radioactivity, said shield having a plurality of protuberances, having walls at an angle to the incident radioactive rays, the said protuberances serving to facilitate the entrance of rays from a distant point, and to restrict the entrance of rays from a nearby point.

"7. In an apparatus for measuring radioactivity within a deep narrow borehole, a cartridge of substantially cylindrical form, a member sensitive to radioactivity mounted upon the said cartridge, and adapted to be lowered with the said cartridge into the borehole, a shielding member of substantially cylindrical form, mounted coaxial to the said cartridge, and adjacent thereto, so as to intercept at least a portion of the radioactive rays passing to the said sensitive member, the said shielding member having a series of portions facilitating the entrance of radioactive rays from distant points, and having further portions restricting entrance of rays from nearby points.

"8. In an apparatus for measuring radioactivity within a borehole, a shielding member adapted to intercept rays originating within the borehole and passing to a sensitive member, the said shielding element having a corrugated surface, the raised portions of the said corrugated surface serving to discriminate against, and at least partially shield from, rays originating from points close thereto, the depressed portions of the corrugated surface serving to facilitate the entrance of rays originating from distant points, the said shield serving as a discriminatory system, discriminating against rays originating from nearby points."

"14. In an apparatus for measuring radioactivity within a borehole, in which a disturbing fluid exists, a holder adapted to be lowered within the borehole, a member sensitive to radioactivity mounted upon the said holder and adapted to be lowered therewith, a shielding member placed adjacent to the said sensitive member and adapted to intercept rays passing to the said sensitive member, the said shield being spaced from the holder and excluding borehole fluid between the shield and holder so as to decrease the thickness of fluid existing between the holder and the radioactive sources at the time the measurement is made, thereby reducing the effects of the borehole fluid upon the radioactive measurement."

The references are: Bucky, 1,164,987, Dec. 21, 1915; Caldwell, 1,208,474, Dec. 12, 1916; Richardson, 1,447,430, Mar. 6, 1923; Bender, 2,133,776, Oct. 18, 1938; Rassler, 2,197,453, Apr. 16, 1940.

As hereinbefore noted, the alleged invention relates to a method and apparatus for measuring radioactivity within boreholes. The measurement which it is sought to obtain is the radioactivity of the earth's strata in and adjacent the borehole. It appears from appellant's application that one of the difficulties encountered in measuring such radioactivity is that the fluid in the borehole, comprising mixtures of water, mud, oil, oil-bearing sands, etc., also exhibits radioactivity and consequently substantially affects measurements of the radioactivity of the earth's strata.

Appellant's apparatus comprises an instrument sensitive to radioactivity, which may be "a Geiger-Muller counter" or other "sensitive element responsive to radiant energy," enclosed within a metallic cartridge. The instrument is lowered into a borehole, and impulses or signals which indicate varying radioactivity encountered at different depths are transmitted to the surface and recorded by apparatus the details of which are not here involved.

The idea of lowering an instrument, such as that disclosed by appellant, in a borehole to determine the radioactivity of radioactive strata and that of the fluid in the borehole, is old. However, prior to ap-

pellant's alleged invention, the apparatus used to determine radioactivity indicated a composite result of the radioactivity of both the earth's strata and the fluid in the borehole.

In order to obtain the radioactivity of the earth's strata, appellant has provided an apparatus and method for discriminating between the radioactive rays (gamma rays) originating in the earth's strata and those originating in the fluid within the borehole. Appellant's contribution to the art is in providing a shield for an instrument sensitive to radioactivity which, according to his application, has "distance discriminating properties" and admits a greater proportion of the gamma rays originating at a distance from the instrument, that is, from the earth's strata, than those originating in close proximity to the instrument, for example, from the fluid in the borehole, although quoted claim 2 calls for a shield "having portions discriminating against rays" originating at a distance from the sensitive instrument.

The shield provided by appellant may, as indicated by the appealed claims, be in various forms.

Quoted claim 1, which is illustrative of claim 4, is for the combination of a measuring instrument and a shield, and calls broadly for a shield which facilitates "the entrance of rays originating distant from the said shield, and having other portions restricting the entrance of rays from material close to the said shield." Quoted claim 5 calls for a shield having "substantially pyramidal depressions" for the purposes mentioned. Quoted claim 6, which is illustrative of claims 10 and 11, is for the shield per se, and calls for a shield having a "plurality of protuberances, having walls at an angle to the incident radioactive rays," the protuberances serving to facilitate the entrance of rays from more distant points and to restrict the entrance of rays from nearby points. Quoted claim 7 calls for a shielding member of substantially cylindrical form, mounted coaxially with, and adjacent to, the sensitive instrument, having a "series of portions facilitating the entrance of radioactive rays from distant points, and having further portions restricting entrance of rays from nearby points." Quoted claim 8, which is sufficiently illustrative of claims 9, 17, 20, and 21, is a combination claim and calls for a shielding element having "a corrugated surface," the raised portions of which

serve to discriminate against the gamma rays originating from points close to the sensitive instrument and the depressed portions of which serve to facilitate the entrance of rays originating from points distant from the instrument. Quoted claim 14 calls for a shielding member spaced from the holder, which contains the sensitive instrument, so as to exclude borehole fluid from between the shield and the holder and thereby decrease the thickness of fluid between the holder and the sources of gamma rays, and thus, to some extent, reduce the effect of the gamma rays originating in the borehole fluid on the sensitive instrument. Claim 18 is for a "method of measuring the intensity of radiant energy from a radiant energy source," and includes the step of interposing absorbing material dispersed in irregular and discontinuous fashion to absorb rays arising from a certain distance, "the interstices between the portions of [the] absorbing material" facilitating "the entrance of rays."

The patent to Bender, on which claims 1, 2, and 4 were rejected, relates to a subsurface prospecting device for detecting radioactivity in material within the borehole of an oil well and, so far as pertinent to the issues here, is, with the exception of the shielding member for the instrument sensitive to radioactivity, somewhat similar to the apparatus called for by the appealed claims. The instrument sensitive to radioactivity employed by the patentee may be a Geiger-Muller counter which is within a housing. The patentee also discloses a shield for the sensitive instrument. The housing is provided with a window so that gamma rays may enter and, as stated by the patentee, bombard the sensitive instrument. The patentee's shield is not interposed between the sources of rays and the sensitive instrument and it is apparent from his disclosure that gamma rays from radioactive material either in close proximity to the sensitive instrument or at a distance therefrom may, without discrimination so far as the shielding element is concerned, bombard the sensitive instrument.

There is nothing in the patent to Bender which remotely suggests that the patentee had any conception of providing a shielding member for his sensitive instrument which might discriminate between rays originating in close proximity to the sensitive instrument and those originating at a distance therefrom. Accord-

ingly, we are not in harmony with the decision of the Board of Appeals affirming that of the Primary Examiner rejecting claims 1, 2, and 4 on the patent to Bender.

■ Claims 2, 8, 9, 17, 18, 20, and 21 were rejected on the disclosure in the patent to Bender in view of the disclosure in the patent to Bucky.

The patent to Bucky relates to an apparatus for projecting X-ray images, and discloses, among other things, an X-ray tube and a plate upon which the image of the body to be X-rayed is projected. It is stated in the patent that in the taking of X-ray pictures "it has been found that a veiling of the image resulting into a foggy appearance of the picture is due to the secondary Röntgen rays which are generated when the primary Röntgen rays pass through a body." The secondary rays referred to are generated in the body being X-rayed, and it is the purpose of the patentee to screen them out while not obstructing the passage of the primary rays. For the desired purpose, the patentee provides a grid or screen of a honeycomb-like structure which, he states, can be of "plane or spherical form."

It is obvious from the disclosure in the patent to Bucky that the patentee was not concerned with the problem confronting appellant and that, so far as appears from the patent, he had no conception either of appellant's problem or means by which it might be solved. We are of opinion that the Bucky patent is from nonanalogous art and that the disclosure therein would not suggest to one skilled in the art involved in the instant case that shields, such as those called for by the group of claims here under consideration, could be provided for discriminating between the gamma rays originating in the fluid in a borehole and those originating in the earth's strata, and that the rejection of those claims on the disclosure in the patent to Bender in view of the disclosure in the patent to Bucky was improper. See In re Luks, 69 F.2d 552, 21 C.C.P.A., Patents, 1005; In re Gibbons, 69 F.2d 547, 21 C.C.P.A., Patents, 1011; In re Reichel, 84 F.2d 221, 23 C.C.P.A., Patents, 1293.

■ Claim 5 was rejected by the Patent Office tribunals on the patent to Bender in view of either the patent to Bucky or the patent to Richardson.

The patent to Richardson relates to a screen for X-ray photography, and discloses a screen having portions which permit the passage of X-rays and portions which prevent the passage of such rays. It is stated in the patent that the use of such screens in X-ray photography is to permit different exposures to be made on the same plate, "the first exposure being made and then the screen shifted so that the unexposed portions of the plate will be presented at the time the second exposure is made. Photographs or pictures made in this way have certain advantages, particularly in connection with surgical work. For instance, if the exposures are taken at different angles, the object to be photographed would be shown from different sides or from different positions in the single plate. This has the effect of producing pictures having certain stereoscopic characteristics, and the stereoscopic effect is accentuated in some instances by the use of viewing screens."

For the reasons hereinbefore stated with reference to the disclosure in the Bucky patent we are of opinion that the disclosure in the patent to Richardson would not suggest to one skilled in the art here involved the use of shields, such as that defined by claim 5, and that the rejection of that claim on the patent to Bender in view of the patents to either Bucky or Richardson was improper.

■ Claims 6, 10, and 11, of which quoted claim 6 is sufficiently illustrative, were rejected as being unpatentable over the disclosure in the patent to Richardson.

For the reasons hereinbefore stated with reference to the disclosure in the Richardson patent we are of opinion that those claims were improperly rejected.

■ Claim 7 was rejected on the patent to Hassler in view of the patent to Caldwell.

The patent to Hassler relates to a method of underground exploration, and discloses a method of measuring radioactivity at various points within the borehole of an oil well. The patentee discloses a sensitive instrument, such as the Geiger-Muller counter, contained in a housing, and the use of a hood or shield made of lead or aluminum which appears to be solid and of uniform shape and which may cover the housing so as to exclude, as the patentee states, "all or certain undesirable rays."

It is stated in the patent that the hood may be used if "it is desired for various

reasons to differentiate between rays of various types and intensities or to check whether the count of the indicator [at the earth's surface] is actually due to the presence underground of some radioactive body, or is merely the background counting rate." There is nothing in the patent to suggest that the patentee's hood or shield was designed or intended for use in "distance discrimination" of gamma rays, or that it might be employed to facilitate the entrance of rays from one point and at the same time restrict the entrance of rays from another point.

The patent to Caldwell relates to an X-ray screening apparatus, and particularly to apparatus for screening out undesirable secondary radiation from the object being photographed. The Caldwell shield is not for distance discrimination and has nothing whatsoever to do with underground exploration. It is our opinion that the Caldwell patent does not suggest the use of a shield in the art to which claim 7 is directed.

We are of opinion, for the reasons stated, that claim 7 was improperly rejected on the patent to Hassler in view of the patent to Caldwell.

■ Claim 14 was rejected on the patent to Hassler alone.

As hereinbefore noted, that claim calls for a shielding element spaced from the holder upon which the sensitive instrument is mounted to exclude borehole fluid from between the shield and holder so as to decrease the thickness of borehole fluid between the holder and the radioactive sources at the time the measurement is made, the purpose of such arrangement being to reduce the effect of the borehole fluid upon the measurements being made.

The patentee Hassler does not indicate that he had any conception of the shield being spaced from the housing or casing enclosing the sensitive instrument so as to reduce the effect of the borehole fluid on the radioactive measurement. However, the patentee discloses a hood or shield which, he states, may cover the casing containing the sensitive instrument.

In its decision the Board of Appeals criticized appealed claim 14, stating that it included "no structure whereby borehole fluid is excluded from the space between the shield and cartridge."

In answer to that statement of the Board, counsel for appellant argues in his brief that the shield in the Hassler patent is open at the bottom and permits borehole fluid to rise between the shield and the holder, whereas, as disclosed in Fig. 13 of appellant's application, the shield is so designed and arranged as to exclude borehole fluid from between the shield and the holder, and that appellant ought not to be required to restrict claim 14 to specific structure owing to the fact that there is no art disclosing or suggesting appellant's concept.

It is true, as argued by counsel for appellant, that Fig. 13 in appellant's application discloses a shielding element so·designed and arranged as to exclude borehole fluid from between the holder and the shield. However, claim 14 does not define the structure disclosed in appellant's Fig. 13, but, on the contrary, merely describes appellant's shielding element by stating its purpose and function. The claim is for structure, and the structure called for should not be defined merely by its function. We are of opinion, therefore, that the claim is unpatentable over the shielding element disclosed in the patent to Hassler which, as hereinbefore stated, may cover the holding element or casing, although the function of the shielding element in the patentee's structure may be entirely different from the function of the shielding element set forth in·claim 14.

Division was required between claims 3, 12, 13, 15, and 16 and the other appealed claims on the ground of misjoinder of invention. Claim 3 is sufficiently illustrative of this group of claims. It reads: "3. In a method of measuring radioactivity within a deep narrow borehole, the steps of lowering a member sensitive to radioactivity within the borehole, so as to receive and indicate the radioactive rays originating at a desired locality within the borehole, of screening off rays arising from material close to the measuring element, of making a similar measurement with the nearby rays included, the two measurements so made giving information concerning the relative radioactive properties of the different materials within the borehole."

As will be observed, claim 3 calls for a method of making dual measurements of radioactivity within a borehole by taking measurements of radioactive rays originating at a desired locality while screening off rays originating in material close to the measuring instrument and then

measuring the radioactive rays including the rays originating in material close to the measuring instrument so that comparison can be made to determine the relative radioactivity of the materials.

As to the requirement for division, the Primary Examiner stated that those claims were directed "to a method or apparatus for measuring radioactivity in a bore hole first with a shield interposed and then with no shield and making a comparison between the two measurements. This plural measurement process and apparatus has attained a separate status in the art from the subject matter recited in the other claims as evidenced by the patent to Hassler."

In affirming the Examiner's action in that regard, the Board of Appeals stated that the two measurements called for by those claims "are made separately by separate operations individual to each. The comparison of the separately recorded results is merely a mental operation or [on] the part of the operator or surveyor."

It may be, as stated by the Primary Examiner, that the "plural measurement process and apparatus" called for by that group of claims has attained a separate status in the art. However, there is nothing in the Hassler patent to indicate that such is the case. On the contrary, it appears that the Hassler patent and the patent to Bender are in the same class, that is, class 250, although they are not in the same subclass.

We have given careful consideration to the requirement for division but are of opinion that the claims which call for the dual "measurement process and apparatus" are so correlated and in unity with the subject matter defined in the other rejected claims that they are entitled to consideration in the same application. See In re Rundell, 55 F.2d 450, 19 C.C.P.A., Patents, 932; In re Hawkins, 57 F.2d 367, 19 C.C.P.A., Patents, 1104. Those claims were rejected solely on the requirement for division and were not considered on their merits. Accordingly, the question of their patentability is not before us.

One other issue requires our consideration. The Primary Examiner held that the description of figure 17 in appellant's application was misleading and required that it be revised or canceled, and his decision as to that requirement was affirmed by the Board of Appeals.

As shown in figure 15 in appellant's application, appellant employs a shield between the sensitive instrument and the radioactive material which comprises a perforated plate having pyramidal protuberances on the side facing toward the radioactive material. As shown in that figure, the shield permits gamma rays originating in material close to the shield to pass through two perforations only and rays originating in more distant material to pass through four perforations. In this manner the shield discriminates in favor of rays originating in the more distant material.

In figure 17 the shield disclosed in figure 15 is reversed so that the pyramidal protuberances are on the side adjacent the sensitive instrument, and rays originating in radioactive material close to the shield are shown as passing through but one perforation in the shield, and those originating in more distant material passing through three perforations.

As stated by counsel in his brief, it appears from appellant's specification that figure 17 shows "the reverse structure and operation from that of Figure 15," and that "with the shield of Figure 15 in the reverse position" it "permits the entry of substantially all of the rays from" a point "near to the shield, while excluding most of the rays from" a more distant point.

It is obvious from an examination of figures 15 and 17 that there is a discrepancy between them. The distances of the radioactive materials from the shields as portrayed do not correspond in the two figures. Furthermore, figure 17 shows the radioactive materials close to the shield and those at a distance therefrom as being directly opposite the most central opening in the shield, whereas in figure 15 such radioactive materials are shown as being opposite one of the pyramidal protuberances in the shield. Despite those discrepancies, it appears from those figures that regardless of which direction the shield faces, the rays originating in more distant material will pass through a greater number of openings in the shield than will those originating in material close to the shield.

As hereinbefore noted, counsel for appellant contends that with the shield in the reverse position, as shown in figure 17, the rays originating in the material close to the shield will pass through the most

central opening in the shield in greater proportion than the rays originating in the more distant material. That statement of counsel is correct. However, the same would be true of the arrangement shown in figure 15 if the radioactive materials were in the same relative positions as in figure 17.

In requiring that the description of figure 17 be revised or canceled, the Primary Examiner stated that because of the discrepancies hereinbefore referred to there was no basis for comparison between the two figures, and that if those discrepancies were eliminated and the sources of the radioactive rays were in the same relative positions and distances in the two figures, it would be immaterial which side of the shield was disposed toward the sources of the radioactive rays.

The Board of Appeals concurred in the Examiner's views in that regard.

We have given careful consideration to the arguments presented here by counsel for appellant but are unable to hold that the tribunals of the Patent Office were in error in holding that the description of figure 17 in appellant's application is inaccurate.

For the reasons hereinbefore stated, the decision of the Board of Appeals is modified, being affirmed as to claim 14 and the requirement that the description in appellant's application of figure 17 be revised or canceled, and reversed as to claims 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 17, 18, 20, and 21 and as to the requirement for division of claims 3, 12, 13, 15, and 16.