34 C.C.P.A. (Patents)

## In re JOHNSON et al.
## Patent Appeal No. 5312.

Court of Customs and Patent Appeals.
June 17, 1947.

Chritton, Wiles, Davies, Schroeder & Merriam, of Chicago, Ill. (Nelson J. Jewett, of Washington, D. C., and Jules L. Brady, of Chicago, Ill., of counsel) for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting all the claims, 1 to 6, inclusive, in appellants' application for the reissue of a patent.

Appellants were the alleged original inventors of a dry, pre-cooked cereal product suitable for infant feeding and a method of preparing the product. They assigned the invention to Mead Johnson & Company and the patent thereon, No. 1,990,329, was issued to the company on February 5, 1935.

Mead Johnson & Company sold the product to the public under the trade name of "Pablum," and in the course of business brought an action charging infringement of claims 5 and 6 of the patent, which claims were drawn to the product.

In that action the District Court of the United States for the Northern District of Illinois, Eastern Division, found infringement but held that the two claims were invalid because of the prior disclosures of the United States patent to Braunbeck, No. 1,011,730, the British patent to Braunbeck, No. 9,528, and in view of the general knowledge in the cereal art. The court accordingly dismissed the complaint from want of equity. Mead Johnson & Company v. Hillman's D. C., 72 F.Supp. 253. Upon appeal by the owner of the patent to the Circuit Court of Appeals, Seventh Circuit, the decision of the District Court was affirmed. Mead Johnson & Company v. Hillman's, Inc., 7 Cir., 135 F.2d 955.

The opinion of the court in that case is a part of the record before us. Following the final decision therein, appellants filed an application for the reissue of patent No. 1,990,329, and the rejection of the claims in that application by the tribunals of the Patent Office forms the subject matter of the issues here involved.

The references are: Braunbeck (Br.) 9,528 Oct. 11, 1906; Braunbeck 1,011,730 Dec. 12, 1911; Boyes 1,846,581 Feb. 23, 1932.

Of the six claims in the application for reissue, claims 1, 2, 3, and 4 are for method, and claims 5 and 6 for product. Claim 1 is illustrative of the claims for method and reads as follows: "1. The method of preparing a dry cereal product quickly convertible into a ready-to-eat, non-granular mush by the addition of fluid consisting principally of water, of any temperature, which comprises cooking ground cereal grain in water under pressure and drying the cooked material, said steps of cooking and drying being carried on under conditions which produce dextrinization and abnormal distortion of the normal starch granules, practically complete absence of typical or characteristic starch granules and practically complete absence of clumps of starch granules and the typical cellular structure of the cereal grain."

In carrying out the method described in the appealed claims, the dried material after being cooked is removed from the drum by a stationary scraper knife. The flakes thus produced are conveyed to a holding tank and then passed through a sieve. That step is described in appellants' specification as follows: "After removal from the dryer drums the material is in flake form. It is conveyed to a holding tank, and then is passed through a sieve or flaking device to make the flakes uniform."

Claim 6, illustrative of the two product claims, has been italicized by appellants to identify the new limitations that were added to the claim subsequent to the action of the courts hereinbefore described. Claim 6 thus italicized reads as follows: "6. A dry, pre-cooked cereal product suitable for infant feeding consisting of thin, fragile *flakes* having porous construction throughout and extremely quick fluid absorptive properties, being quickly convertible by the addition of fluid *consisting principally of water,* of any temperature, into a stable suspension, a mush free from lumps and having the taste, appearance and physical characteristics of a readily digestible cooked cereal, *and wherein there is loss of identity of the individual flakes when the mush is viewed en masse,* said dry product being characterized by dextrinization, by practically complete absence of clumps of starch granules and of typical or characteristic starch granules of the grain used in the product, and by abnormal distortion of the comparatively few remaining distinguishable starch granules, *and being further characterized by the ability to hold in stable suspension a high ratio of liquid, substantially greater than that held in stable suspension by the same product ground to a flour.*"

The subject matter here involved relates more particularly to a dry pre-cooked cereal in the form of small fragile flakes adapted to be mixed with a fluid, such as milk or water of any temperature, whereby the product is instantly converted into a mush having the appearance and charac-

926

teristics of a cereal which has been thoroughly cooked in a double boiler.

The United States patent to Braunbeck relates to improvements in processes of completely opening or disintegrating grain, such as rye, wheat, barley, oats, rice, maize, etc., and legumes, such as peas, beans, lentils, etc.

Those commodities are subjected by the patentee to a steaming and cooking process of such intensity that the form of the cells is entirely destroyed. In order to convert the grain into pulp, the steaming and cooking process is preferably carried out in the presence of water, and stirring or crushing agents may be simultaneously employed whereby the pulp is almost entirely disintegrated.

Thereafter the pulp is fed to highly heated rollers by which the pulp is dried. Because of the heating of the starch pulp to a high temperature, and in some cases under pressure, the materials containing starch are burst previously to the drying thereof.

Five of the thirty nine reasons of appeal are directed to alleged errors in the decision of the board with respect to claim 2 of Braunbeck's United States patent. It is therefore deemed advisable to quote that claim which reads as follows: "2. The herein described process of producing a dry flour from grains and legumes which consists in boiling the grains or legumes in water or steam until the starch cells of the same are burst open and form a paste, next passing the paste in the form of a thin film very quickly between closely arranged revolving rollers heated to a temperature ranging between 120° and 200° C., and then immediately removing the resulting material from such rollers after the paste has been in contact therewith for a period just sufficient to convert the film of paste into a dry substance."

The specification of the patent points out that the disclosed process has the advantage of increased simplicity because the separate steps follow each other immediately; that the pulp is dried in a thin layer in a fraction of a minute by the heated rollers and is scraped off in the form of extremely fine flakes, which are then reduced to flour; that the treatment in the rollers is to be regarded as the completion of the disintegrating process; and that the subsequent reduction of the disintegrated flakes to flour is done in any known manner. Neither of Braunbeck's two claims defines the step of grinding the flakes.

The specification states that when the disintegrated flakes are reduced to flour in a milling process, completely disintegrated flour is obtained which swells and immediately absorbs a great quantity of water when the flour is brought into contact with the water.

The disclosure of the British patent to Braunbeck is substantially the same as the disclosure of his United States patent. The British patent relates to a process for completely disintegrating grain and legumes with the object of obtaining a flour therefrom which is perfectly separated and capable of swelling and absorbing a relatively large quantity of water. When a closed steam boiler is used in carrying out the process, the cooking of the grain is completed in 15 to 20 minutes.

The patent to Boyes, among other things, shows that in the production of cereal meals which require no cooking by the purchaser, it was old in the cereal art to pre-cook the material in a cooking or digesting machine under steam pressure ranging from 4 to 6 pounds per square inch and, in the case of some grains, as high as 15 pounds per square inch.

The steps of cooking ground cereal grain in water under pressure and drying the cooking material as defined by appellants' method claims 1, 2, 3, and 4 are fully disclosed in either of the patents to Braunbeck combined with the patent to Boyes.

The additional limitation in claims 3 and 4 of cooking "approximately one hundred pounds of ground cereal grain in approximately thirty-five gallons of water" defines no critical proportion and, as pointed out by the Solicitor for the Patent Office, "it would seem to be only a matter of easy experimentation to determine the proper proportion of water to cereal to obtain a desired consistency of the cooked product."

A further limitation in claim 4 describes the step of ground cereal grain and water "for about twenty minutes under approximately ten pounds steam pressure." As hereinbefore stated, the patent to Boyes discloses the use of steam pressure ranging from 4 to 15 pounds per square inch, and the British patent to Braunbeck shows that his pressure cooking is completed in 15 to 20 minutes. Moreover, no invention is seen in the determination of such factors.

■ The method claims contain the limitation of cooking and drying material under conditions which produce a certain result, the conditions under which such cooking and drying is carried on being therein undefined. Such a statement, which merely describes a result, does not add a positive element to the claim or confer patentability upon it. In re Crecelius, 86 F.2d 399, 24 C.C.P.A. (Patents) 718, In re Susseman, 141 F.2d 267, 31 C.C.P.A. (Patents) 921.

Moreover, the resultant characteristics of the product described in the appealed claims relate to the absence of starch granules and the typical cellular structure of the cereal grain which has been subjected to the cooking process. Those characteristics are adequately met by the disclosure in the United States patent to Braunbeck in which it is stated that his cooking process is of such intensity that the form of the cells is entirely destroyed.

The claims for method and the claims for product here involved are closely related. Appellants concede that no distinction on the merits is to be made between Braunbeck's intermediate product and their own product as recited in claims 5 and 6. That concession, together with a statement of appellants' position herein, reads as follows:

"* * * it is conceded that Braunbeck's process, run near the center of his temperature ranges, could produce the product here in issue in the *intermediate* stage, *before* the material is ground to a flour, Braunbeck's actual product.

"Except to note of record the fact that the intermediate product of the Braunbeck process might be or *might not* be the same as the product here in issue, no distinction on the merits is being made between Braunbeck's *intermediate* product and the product here being claimed. It is our contention that Braunbeck's *intermediate product* fails to anticipate the invention here in suit for legal reasons." (Italics quoted)

Appellants contend that the appealed claims define invention for the reason that the flake form of Braunbeck's intermediate product is transitory and ephemeral; that Braunbeck did not appreciate the fact that his flakes would have properties and advantages for any purpose other than to be immediately ground to flour; and that for 25 years he had no idea that the flakes made by his process had any such advantage as the highly valuable and widely used food for infants defined by the claims on appeal.

The arguments which appellants here present on the point in issue were presented and decided by the Board of Appeals, which set forth claim 2 of the United States patent to Braunbeck, supra, and held as follows:

"The claim does not proceed to making the flour but stops with the formation of the flaky product. The process carried no further than is there claimed would produce the product for which applicants now seek a patent, and the process which is defined in the patent claim is substantially the same as that now claimed by applicants. It is true that Braunbeck in his specification does not point out as applicants do the advantages of not making flour out of the flaky product produced but in our opinion the fact that the patent claims the process of producing the flaky product omitting the grinding of the product to flour precludes applicants from obtaining a second patent on the same process and on the product produced by that process. That Braunbeck considered claim 2 to set forth a complete process is borne out by the following statement in the specification that:

"'The treatment in the rollers is therefore to be regarded as the completion of the disintegrating process. The subsequent reduction of the flakes to flour is done in any known manner.'

"In our opinion the fact that Braunbeck intends his flaky product to be reduced to flour and applicants intend the same flaky product not to be reduced to flour does not entitle applicants to a patent on the flaky product."

We have examined the points and authorities cited by appellants to establish that the foregoing holding of the board was erroneous and we are of the opinion that appellants have failed to do so.

Moreover, the authorities cited to support appellants' contention, that in carrying out a continuing process, the product produced by Braunbeck was not of itself recognizable as a product capable of permanent existence, and therefore does not anticipate the product defined by the claims on appeal, are cases all of which are distinguishable in principle from the case at bar and are clearly not pertinent to the issue here involved. The flakes produced by the Braunbeck process are neither transitory nor ephemeral but are by nature tangible and permanent pending the subsequent treatment to which they are subjected.

■ The italicized portions of claim 6 do not patentably distinguish that claim from the disclosure of the prior art. The description of appellant's product as having the form of "flakes" does not distinguish such flakes from the flakes of Braunbeck. That the flakes described by appellants are quickly convertible by the addition of fluid "consisting principally of water," is only a statement of how the product will react when water is added to it. That statement, like the remainder of the italicized portions of the claim, states an alleged capability of the product rather than a description of the product itself. Such statements cannot impart patentability to the claims over the disclosure of the prior art. General Electric Co. v. Wabash Appliance Corporation et al., 304 U.S. 364, 58 S. Ct. 899, 82 L.Ed. 1402; Application of Krasnow, 152 F.2d 969, 33 C.C.P.A. (Patents) 764.

Appellants contend that the italicized word "flakes" in claim 6 contemplates something completely different from flour. Appellants have conceded that the so-called intermediate flakes of Braunbeck are substantially the same as their own product, and while it is true that by grinding the flakes of Braunbeck the physical form thereof is changed and differs to an extent from the flakes of appellants, nevertheless such difference is not a difference in kind but only one in degree.

As to the final clause in claim 6 with respect to the capability of the claimed product to absorb water, Braunbeck, as hereinbefore described, stated that his product has the same property; and as to the limitation of the degree that appellants' product is capable of holding a high ratio of liquid in suspension as compared to the same capability in the product of Braunbeck, the matter is also one involving only a difference in degree and not in kind.

■ For the reasons hereinbefore stated, we are of opinion that appellants have failed to show any error in the decision of the Board of Appeals and have also failed to show that invention is defined by the claims on appeal.

In view of that conclusion, the question of commercial success becomes immaterial. In re Irmscher, 150 F.2d 705, 32 C.C.P.A. (Patents) 1259.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.