36 C.C.P.A.(Patents)

## Application of IRMSCHER.
### Patent Appeal No. 5496.

United States Court of Customs and Patent Appeals.

Dec. 7, 1948.

Louis Barnett, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 22, 26, 27, 28, 29, 31, 32, 36, and 38 in appellant's application for a patent for alleged new and useful improvements in filler apparatus for measuring a feed supply in packaging fluent products. Claims 1, 4, 11, 14, 21, 30, and 37 were allowed.

The only reference cited is the patent to Brewer et al., No. 2,339,908, issued January 25, 1944, on an application filed October 10, 1942, which application was pending concurrently in the Patent Office with appellant's present application filed August 24, 1943.

Claim 26 is illustrative and reads: "26. A mechanism of a bag packaging machine of the character described for measuring filler charges comprising a supply source of fluent material including a chamber, a cylindrical member mounted for rotation below said chamber having a receptacle extending therein, a bottom piece adjustably mounted in said receptacle for predetermining the capacity of the latter, an elongated channel extending from said chamber wherethrough the fluent material intermittently flows into the receptacle, means below said member for receiving the dis-

charge of the measured fluent material from the receptacle, means for rotating said member, means extending from said member for setting the adjustment of said bottom piece to a predetermined charge, the channel having an outlet adapted to align with an opening of said receptacle, said outlet and opening being substantially of the same cross-sectional shape and size, said discharge means having greater cross-sectional area than said receptacle opening, and a variable speed driving means forming part of the means for continuously rotating said member to give maximum and minimum peripherial [sic] speeds to said member during the period of discharge of said material from the receptacle and during the period of filling respectively the maximum speed being sufficient to produce centrifugal force for discharging all material from the rotating member, said receptacle being formed with a hardened wall portion located to cut the stream of material flowing from the channel to the receptacle and serving as an abrasive resistant."

The automatic mechanism described in appellant's specification is designed for use as a high-speed, large production packaging apparatus in the manufacture of infusion packages, such as tea balls and the like, in which measured quantities of tea, coffee or other filling material is intermittently fed to the package bags being manufactured from a bulk supply source while preserving at the same time the fluent condition of the filling material.

Appellant's apparatus is illustrated by four pages of drawings and its elements and their operation described in more than eight additional pages of printed detail. Referring to the drawings, the examiner gave the following brief description of appellant's device:

"Applicant's device, best shown in Fig. 1, consist of a hopper or supply chamber 23 with flexible walled channels 24 for conducting material downward therefrom to a rotating measuring cylinder 26b. The measuring cylinder has trap chambers 26a which alternately register with channels 24 and outlet passages 38f as the cylinder rotates.

"The capacity of the trap chambers can be varied by adjusting the bottom pieces 26j by turning shaft 32 which has eccentric crank portions 32a extending through slots in the bottom pieces as shown in Fig. 6.

"The channels 24 have flexible side walls 24b which are vibrated by cam 41 and cam roller 40e, shown in Fig. 4. The cam roller is attached to bar 40 which in turn has pins 40c connected with the flexible walls.

"The measuring cylinder 26b has a variable drive shown in Fig 2 which, by means of an eccentric sprocket 29, rotates the cylinder with a slow movement while the trap chambers are being filled and a rapid motion during the emptying of the trap chambers. This variable speed allows more time for the filling of the trap chambers and in emptying tends to throw the material out of the trap chambers.

"The measuring cylinder is shown in cross section in Figs. 6 and 7, in the filling position in Fig. 6, and the emptying position in Fig. 7. The segment 26f of the cylinder is made of hardened steel to cut through the material while passing the filling station."

The claims on appeal were rejected by the tribunals of the Patent Office on the ground that they fail to distinguish in a patentable sense from the patent to Brewer et al. The Solicitor for the Patent Office concedes that appellant's device, as defined by the allowed claims, involves invention but contends that the measure of his invention is fully covered by those claims.

The patent to Brewer et al. provides apparatus for delivering measured quantities of free flowing powdered or granular materials, such as sugar, salt and the like, at regular predetermined intervals and at the same time facilitate the charging and discharging of the measuring unit.

As illustrated in the drawings and described in the specification, so far as pertinent, the reference discloses a rectangular housing within the upper portion of which is a hopper having walls which converge to the circular discharge opening. Material fed from the hopper, through a broad-mouthed funnel and channel is measured in a chamber within a rotatable cylinder and

discharged therefrom into a tapering spout. The upper end of the spout is flared and has a larger cross-section at the top than the opening in the rotatable measuring cylinder.

The device disclosed in the patent to Brewer et al. is also described, as noted in the brief of the Solicitor for the Patent Office, as follows: "The size of the chamber within the cylinder 27 may be varied by movement of the plug 31 by means of the knurled head 34. The cylinder 27 has a shaft 31 to which is attached a weighted arm 12. There is a motor 7 the speed of which can be set, that is, the speed can be adjusted, 'by adjustment of a control knob' (R. 39, col. 2, lines 3 and 4). The motor drives the wheel 8 carrying finger 9 through the speed reducing gearing 10, and the finger 9 is provided with a rubber sleeve 11 where it engages the weighted arm 12. The result of this construction is that the measuring cylinder is driven slowly when the opening 35 is in filling position, to permit complete filling, and rapidly because the arm 12 'moves ahead of the finger 11,' to permit complete discharge, as described (R. 40, col. 1, lines 59-72) in the specification. The funnel 13 is provided with the bar 16 which the specification states (R. 39, col. 2, lines 29-31) 'facilitates the movement of the material · from the hopper 3 to the measuring unit.' "

The board, holding that claim 22 claimed less distinction over the reference patent than does claim 26, confined its discussion of the merits of those two claims to claim 26, which the board described as the most limited claim on appeal. Some portions of appellant's argument are based upon points not raised by his reasons of appeal, and other portions are based not upon the specific structure defined by the rejected claims, as required by law, but upon the purpose and function of that structure. See In re Jacobi, 64 F.2d 691, 20 C.C.P.A., Patents, 1052, and In re Krasnow, 152 F.2d 969, 33 C.C.P.A., Patents, 764.

The reasons of appeal raise the question of whether the tribunals of the Patent Office erred in taking the position that appellant's bottom piece is the equivalent of the side piece of the reference, since the pieces in both apparatus are used to accomplish the same purpose, namely, the adjustment or variation of the capacity of the measuring receptacle. In view of the teaching of the reference that the capacity of the measuring piece may be effected by the adjustment of the bounding surfaces thereof, it appears to be obvious to one skilled in the art to so adjust such surfaces without the exercise of the inventive faculty.

Appellant further argues to the effect that the Board of Appeals erred in affirming the examiner's holding that a "continuously" rotating member, as defined in claim 26, is descriptive of the cylinder disclosed in the patent to Brewer et al. despite the peculiar "irregular rotary movement" given to such cylinder. The board held that the motion of the cylinder 27 in the patent to Brewer et al. is continuous in the broad sense of the word, since the cycle or sequence of its operation is uninterrupted. In support of its position the board directed attention to the fact that only a broad recitation of variable speed drive means is claimed by appellant, together with a statement of function of how that drive means acts, and that the language of the claim does not avoid the interpretation placed upon the character of movement of the cylinder disclosed by Brewer et al. We find no basis in appellant's argument which would warrant a reversal of the board's action on the point in question.

Appellant argues further that a patentable distinction is defined by claim 26 over the reference in the relative sizes of the openings for the reception and discharge of material. Appellant's discharge means is larger than the opening feeding the spout. This is for the obvious purpose of accelerating the discharge of the material from the measuring cavity into the spout. The board held that the enlargement of an opening, if the opening were small, was well within the range of skill of a mechanic, and further that the language of claim 26 does not distinguish the alleged difference in a patentable sense over the reference. It is our opinion that appellant's argument to the contrary is untenable. See In re John T. Phipps, 36 F.2d 143, 17 C.C.P.A., Patents, 668.

Appellant contends that the board erred in holding that, as defined in claim 26, the construction disclosed by the patent to Brewer et al. provides that centrifugal force is acting on the material to discharge the same from the cylinder receptacles, when as a matter of fact the reference teaches that the discharge cylinder "comes to rest." The decision of the board on the point in question reads as follows: "Appellant still further points out that claim 26 requires the maximum speed of the rotating cylinder to be such as to produce centrifugal force for discharging all material from the cylinder. The Examiner ascribes to the Brewer et al. rotating cylinder a throwing action on its contents. The appellant contends that Brewer et al. has no such action. However, in Brewer et al. the arm 12 does fall from the vertical, and there must of necessity be some component of force acting radially of the cylinder 27. Centrifugal force, therefore, is acting on the materials in the cylinder. Whether all of the material in the cylinder 27 will be expelled or not depends upon the position of the plug 31 in the cylinder. The optimum condition for expelling all of the contents of the cylinder 27 would, of course, be the condition when the material engaging face of the plug 31 is flush with the edge of the opening 35."

The import of appellant's argument is set forth in his brief to the effect that the device of the reference provides for no maximum or minimum peripheral speeds during the filling and discharge of the cylinder but that the cylinder 27 is brought to a rest. The reference describes means for adjusting the speed of rotation. The peripheral speeds, however, are not a part of the structure, and as correctly pointed out in the brief of the Solicitor for the Patent Office—"The fact that the cylinder 27 is brought to rest in each revolution, however, does not alter the fact that as described in the specification the arm 12 on the up stroke 'moves relatively slowly' to permit filling. Nor does that fact that there is a rest period

alter the clear disclosure that on the down stroke the arm 12 'moves ahead of the finger 11,' that is, that the patent discloses a 'relatively fast movement during the discharge,' as stated by the examiner. * * * "

We are not convinced that the board has erred on the point in question.

Appellant's contention that there is invention over the disclosure of the reference in having the hardened wall portion of his segment 26f is without merit, as correctly pointed out by both tribunals of the Patent Office.

Appellant further contends that the board erred with reference to its holding on that feature of claim 38 which includes means to accelerate the flow of the fluent material from the chamber to the receptacle in excess of that produced by gravity.

The Solicitor for the Patent Office concedes that appellant's shaking means is structurally different from the stationary bar 16 of the reference, which "facilitates" the movement from the hopper to the measuring unit. We are not convinced, however, that there is a patentable difference between the means of the reference which "facilitates" the movement of the material and the means "to accelerate" it as defined in the claim. Furthermore, no specific structure of means is described by appellant, and as correctly pointed out by the board, the structure of the reference performs the same function as appellant's means and falls within the language of claim 38.

Like claim 22, the remainder of the rejected claims, 27, 28, 29, 31, 32, and 36, claim less patentable structure over the structure of the cited reference, as the board properly held. In view of that conclusion it is deemed unnecessary to further discuss those grounds of rejection or reverse the holdings of the tribunals of the Patent Office regarding them or claim 26.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.